J-A28045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KIRK J. ALCORN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TERESA E. ALCORN | : | No. 67 WDA 2020 |

Appeal from the Order Entered December 17, 2019
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD-16-003835-008

| | | |
|---|---|---|
| KIRK J. ALCORN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TERESA E. ALCORN | : | |
| | : | |
| Appellant | : | No. 142 WDA 2020 |

Appeal from the Order Entered December 17, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  Case No. FD 16-003835

BEFORE:  OLSON, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED: May 28, 2021**

In this divorce action, Kirk J. Alcorn (Husband) appeals, and Teresa E.

Alcorn (Wife) cross appeals, from the order entered in the Allegheny County

Court of Common Pleas, affirming the master's final report and

recommendation.[1]   Wife's brief states that she now abandons her alimony pendente lite (APL) claim.  Husband presents seven issues on appeal, which we summarize as claims of trial court error in: (1) affirming the master's ruling that Wife could present evidence despite her failure to file a proper pre-trial statement; (2) remanding the issue of the value of certain real property for further consideration by the master; (3) failing to properly consider Husband's reasonable monthly expenses, including his retirement contributions, when determining equitable distribution and denying his request for alimony; (4) denying his request for alimony; and (5) denying his claim for attorney's fees. We affirm.

## I.  Facts & Procedural History

The trial court aptly summarized the underlying facts and procedural history:

> The parties married on March 4, 2005[, when Wife was approximately 30 years old and Husband was 50 years old.  They were married for 10 years before separating] on October 23, 2015.  This was Wife's first marriage and the second for Husband. The parties have no children.
>
> Husband had a construction business during the marriage. Wife worked for Husband during the parties' marriage while building her separate career and income.  Husband liquidated his

---

[1] While the text of order was dated December 13, 2019, it was stamped as "filed" and entered on the docket on December 17th.  As Wife's notice of appeal referred to a "December 13, 2019," order, we have amended the caption for her appeal to reflect the formal December 17th filing date.

This court *sua sponte* consolidated these appeals on February 14, 2020.

business in a bankruptcy filing and afterwards began working as an employee and/or consultant for construction companies. Wife's separate income continued to increase and — shortly before separation — she began to earn much more than Husband. Husband took an early retirement prior to separation but returned to the workforce soon after. Wife's income has increased further post-separation.

Trial Ct. Op., 6/10/20, at 2-3 (paragraph break added).

On March 21, 2016, Husband filed a complaint in divorce, seeking, *inter alia*, equitable distribution of the marital property, alimony, alimony pendente lite (APL), exclusive possession of the marital residence, and counsel fees.

On February 21, 2017, the trial court ordered

the Parties to submit a current marital asset summary and net income calculation in a pre-trial statement, and serve it on the opposing fifteen days before trial. Wife did not file a timely pre-trial statement, but presented one to Husband's counsel on June 22, 2017, a week prior to [the June 28th master's hearing]. Her statement was in narrative form and lacked the specificity required by [the court's] Order.

Trial Ct. Op. at 6.

The master conducted a hearing on June 28, 2017. Husband presented a motion *in limine* to preclude Wife from presenting any evidence, due to her non-compliance with the trial court's February 17th order to file a proper pre-trial statement. N.T., 6/28/17 A.M., at 3.[2] The master ruled generally that

---

[2] The certified record includes two transcripts for the June 28, 2017, master's hearing, entitled "Equitable Distribution Trial" — for the morning session, and "Equitable Distribution Trial - Volume II" — for the later session that same day. For ease of review, we cite these two volumes as "N.T., 6/28/17 A.M." and "N.T., 6/28/17 P.M."

Wife could present evidence, but if Husband showed prejudice as to any particular evidence, the master "might change the ruling in that regard." *Id.* at 3-4.

The trial court summarized:

> At the time of the . . . Master's hearing, Husband was 62 and Wife was 42 years of age. Husband had a yearly gross salary of $90,000,[3] plus a vehicle allowance. Wife was earning a base salary of approximately $237,000 per year along with a complicated arrangement of bonuses and other perquisites, resulting in gross income of $307,681 for 2017.
>
> At the time of trial, Wife was paying $2,798 monthly APL to Husband. The parties stipulated to the value of much of their marital property. They disagreed on the value of jointly owned real estate in Kittanning, Pennsylvania on which they had begun, but not completed, construction of a home (the "Kittanning property").

Trial Ct. Op., at 3.

With respect to the Kittanning property, the parties purchased the parcel of land in 2014 for $85,000. N.T., 6/28/17 A.M, at 12-13, 27. Construction of a house began in May of 2015, and the parties separated six months later. *Id.* at 26. At the time of separation, the house had exterior walls, but "no roof structure or windows." *Id.* at 44. At the June 28, 2017, master's hearing, neither party presented any expert testimony about the value of the property. Husband testified the current value of the property was $85,000 — the "initial

---

[3] For ease of review, we have omitted ".00" where the monetary amounts do not include any cents.

purchase price of the property." N.T., 6/28/17 P.M, at 76. He also testified, generally, that no one, even a builder, would want to buy a partially built house. *Id.* Husband estimated the cost to complete the property to be approximately $150,000. *Id.* at 137. Meanwhile, "Wife testified that the Kittanning property was likely worth about $150,000 because a realtor she knew told her so." Trial Ct. Op. at 7. There was an outstanding construction loan on the property of $121,530. Amended Report & Recommendation of the Master, 10/3/17, at 3. Husband requested the Kittanning property in equitable distribution, and stated he would need a cash offset and alimony to "afford" the property. N.T., 6/28/17 P.M., at 17.

On September 29, 2017, the Master issued a report and recommendation, which was amended on October 3rd. The Master divided the assets 55%/45% in favor of Husband, and divided the marital debt equally. The Master accepted Wife's testimony that the value of the Kittanning property was $150,000. Amended Report & Recommendation of the Master, 10/3/17, at 5.

> The Master stated he had reviewed the factors of 23 Pa.C.S.[ §] 3502(a) and specifically noted factor 5 in that he considered that Wife, being Husband's junior by 20 years, will have a greater opportunity to acquire capital assets and income.
>
> The Master denied Husband's alimony claim, finding that Husband could meet his reasonable needs by way of his substantial income and his receipt of his portion of the marital estate. The Master increased Wife's APL obligation by $1,404.49 retroactive to January 1, 2017, but found she was entitled to credit for $11,405 in direct payments made on Husband's behalf,

resulting in an APL overpayment to Husband in the amount of $759.18. The Master did not award either party attorney fees.

Both parties timely filed exceptions which [the trial court] disposed of by [a] March [21], 2018 Order, partially sustaining three of Husband's [19] exceptions, dismissing Wife's cross-exceptions, and remanding to the Master a determination of the value of . . . the Kittanning property.

Trial Ct. Op. at 3-4. In its order, the court explained:

As the parties both failed to obtain expert report or testimony with regard to the valuation of the real estate in Kittanning despite its unique nature, it is impossible for this Court, nor for the Master, to make a determination as to its proper value for the purposes of equitable distribution. Accordingly, the parties are each ordered to obtain an appraisal or to obtain a joint appraisal and this matter is remanded to the Master for a determination of the value of the Kittanning real estate only.

Order, 3/21/18. Both parties responded by filing appeals, which were docketed in this Court at 534 WDA 2018 and 627 WDA 2018. "Their appeals were ultimately quashed as the remand was pending." Trial Ct. Op. at 4.

Meanwhile, we note, a divorce decree was entered on May 14, 2018. Pertinent to this appeal, the trial court issued an order on September 13, 2019, denying Wife's request to terminate APL.[4]

The master conducted the remand hearing on October 24, 2019, on the issue of the value of the Kittanning property. Rather than obtain a property

_____

[4] We note the certified record does not include any written motion, by Wife, to terminate APL. However, the record contains a written "Response to [Wife's] Petition to Terminate Alimony and New Matter," filed by Husband, likewise on September 13, 2019.

appraisal as directed by the court's order, the parties stipulated to a value of $138,500. N.T. Hearing, 10/24/19, at 4.

The master entered a report and recommendation on November 15, 2019, which the trial court adopted by the underlying order on December 17, 2019. Pertinently, Husband was awarded, as he requested, the marital residence, along with the outstanding mortgage, and the Kittanning property, with the outstanding construction loan. Both parties appealed and complied with the court's order to file Pa.R.A.P. 1925(b) statements of errors complained of on appeal.

## II. Wife's Cross-Appeal: Denial of Termination of APL

In her Rule 1925(b) statement, Wife averred the trial court abused its discretion in denying her request to terminate APL and failing to conduct a hearing on this issue. However, in her brief, she states, "The cost to Wife of continuing to pay APL for a remand on her cross-appeal should she not prevail far outweighs the benefit of prevailing and, as such, she waives her matter on cross-appeal." Wife's Brief at 9. As Wife has abandoned her claim, we do not disturb the trial court's September 13, 2019, order, which, *inter alia*, denied her request to terminate APL.

## III. Husband's Statement of Questions Involved

Husband presents seven issues for our review:

[1.] Whether the Trial Court erred in failing to restrict testimony and evidence based upon Wife's non-compliance with the Pre - Trial Order dated February 21, 2017?

[2.] Whether the Trial Court erred in remanding the matter for further valuation of Kittanning property and further erred by not basing the valuation of the property off of Husband's trial testimony as it was the only testimony and therefore evidence presented that was not based off of hearsay testimony and evidence that should have otherwise been excluded based on Wife's non-compliance with the February 21, 2017 Pre -Trial Order?

[3.] Whether the Trial Court erred by accepting the Master's general distribution scheme given the statutory factors and based on the Master's failure to analyze the statutory factors as set forth in 23 Pa.C.S. § 3502[?]

[4.] Whether the Trial Court erred in failing to appropriately consider the expenses and budget of Husband, to include the effect and expense of the equitable distribution award, the contributions that Husband is making to retirement, and by considering assumptions not supported by the record?

[5.] Whether the Trial Court erred in failing to consider retirement contributions by Husband and the circumstances that necessitated the same when determining the equitable distribution and alimony award?

[6.] Whether the Trial Court erred by failing to appropriately consider and apply the alimony factors pursuant to 23 Pa. C.S. § 3701 and thus failed to appropriately award alimony, and the alimony determination was vague and not supported by the record?

[7.] Whether the Trial Court erred in failing to award appropriate counsel fees to Husband?

Husband's Brief at 7-8.[5]

---

[5] We have reordered Husband's issues for ease of review.

**IV. Wife's Pre-Trial Statement & Presentation of Testimony**

In his first issue, Husband asserts the trial court committed reversible error in affirming the master's decision to allow Wife, "without any penalty, to testify and present evidence on values and claims regarding [marital] assets which she did not include in her untimely filed pre-trial statement." *Id.* at 26-27. Husband maintains Wife failed to submit a proper summary of marital assets and net income, as directed by the trial court's February 21, 2017, order. He contends Wife's statement made "absolutely no mention of [her] proposed value of marital assets and liabilities, . . . the valuation of the Kittanning Property[, or her] income and makes only a passing reference to Husband's income." Husband's Brief at 30. Husband reasons that Pennsylvania Rule of Civil Procedure 1920.33(b)(1), which directs parties to file and serve pre-trial statements, is mandatory in nature, and thus the court was required to impose some sanction or consequence on Wife. *Id.* at 29, 32. He avers he was "surprise[d] when Wife presented testimony on issues and values that were not included in her Pre-Trial Statement," emphasizing her valuation of the Kittanning Property. *Id.* at 31, 33-34. We conclude no relief is due.

> Regarding the admission of evidence, this Court has instructed:
>
> Evidentiary rulings are committed to the sound discretion of the trial court, and will not be overruled absent an abuse of discretion or error of law. In order to find that the trial court's evidentiary rulings constituted reversible error, such rulings must not only have been erroneous but must also have been harmful to the complaining party. Appellant must therefore show error in the

evidentiary ruling and resulting prejudice, thus constituting an abuse of discretion by the [trial] court.

***Whitaker v. Frankford Hosp.***, 984 A.2d 512, 522 (Pa. Super. 2009) (citations omitted).

Rule 1920.33(b), upon which Husband relies, sets forth a list of information a party must include in a pre-trial statement. ***See*** Pa.R.C.P. 1920.33(b)(1)-(10). Subsections (c) and (d) provide that a party who fails to comply "may" be sanctioned or "may be barred" from presenting evidence as follows:

> (c) If a party fails to file . . . a pre-trial statement as required by subdivision (b), the court **may** make an appropriate order under Pa.R.C.P. No. 4019(c) governing sanctions.

> (d)
> (1) A party who fails to comply with a requirement of subdivision (b) **may be barred** from offering testimony or introducing evidence in support of or in opposition to claims for the matters omitted.

> (2) A party **may be barred** from offering testimony or introducing evidence that is inconsistent with or goes beyond the fair scope of the information set forth in the pre-trial statement.

Pa.R.C.P. 1920.33(c)-(d) (emphases added).

Here, the trial court affirmed the master's admission of Wife's testimony on the ground there was no prejudice to Husband:

> Husband should not have been surprised by Wife's testimony as to any facts pertinent to this appeal nor was he able to convincingly articulate how he was unfairly prejudiced by allowing it. Wife had provided information on her income in discovery and, while Wife's "pretrial statement" was not in compliance with my

> Order, it did not appear in my estimation to be a manifestation of bad faith.

Trial Ct. Op. at 7.

First, we reject Husband's contention that the trial court was required to impose at least some sanction on Wife. Instead, Rule 1920.33(c) and (d) plainly state the trial court "may make an appropriate [sanction] order" and the party who fails to comply "may be barred" from presenting evidence. **See** Pa.R.C.P. 1920.33(c)-(d) (emphases added). Additionally, we do not disturb the court's finding that Husband has not established prejudice. **See** **Whitaker**, 984 A.2d at 522. While Husband argues on appeal that he was "surprised" by Wife's testimony at the master's hearing, he presents no claim of any specific detriment to his case, nor any instance of his inability to respond to her testimony. **See** Husband's Brief at 31. In discussing at length Wife's valuation of the Kittanning property, Husband ignores that he ultimately stipulated to a value of $138,500. **See id.** at 31, 33-34; N.T., 10/24/19, at 4. We thus conclude no relief is due on this first issue.

## V. Valuation of Kittanning Property

In his second issue, Husband contends the trial court committed reversible error in remanding, following the first master's hearing, the issue of the valuation of the Kittanning property. He incorporates his argument that Wife should have been precluded from presenting any evidence due to her failure to submit a proper pre-trial statement. Husband further alleges the "Court had ample competent evidence to value the Kittanning property,"

namely his own testimony, based on "his personal experience in the construction field, on site knowledge of what construction still needed to be performed and the costs associated with the work." Husband's Brief at 34, 36. Meanwhile, Husband avers, Wife's valuation was based on hearsay. *Id.* at 36.

Again, Husband overlooks that he stipulated to the value of the Kittanning property. This Court has stated:

> Statements of fact by one party in pleadings, stipulations, testimony, and the like, made for that party's benefit, are termed judicial admissions and are binding on the party. Judicial admissions are deemed true and cannot be contradicted by the admitting party. . . .

*John B. Conomos, Inc. v. Sun Co.*, 831 A.2d 696, 712 (Pa. Super. 1989) (citations omitted). Such admissions are likewise binding on appeal. *Id.* at 713.

Husband stipulated to a value of $138,500, N.T., 10/24/19, at 4, which was incorporated by the master's November 15, 2019, report and the trial court's December 17th order. Husband thus cannot now argue the trial court erred in not accepting his earlier claim as to the value. *See John B. Conomos, Inc.*, 831 A.2d at 712-13.

## VI. Husband's Financial Circumstances and Monthly Expenses

We consider Husband's third, fourth, and fifth issues together. First, he alleges the trial court committed reversible error in accepting the master's equitable distribution scheme. He maintains both the master's report and the

court's order are "devoid of a complete analysis of all the relevant statutory factors" of 23 Pa.C.S. § 3502. Husband's Brief at 40. Husband contends that although "the Trial Court claims that it considered the [parties'] age and income discrepancy," the court nevertheless failed to consider the parties' current, "drastically different" economic circumstances. *Id.* at 40-41. He first characterizes Wife's financial situation as follows: she was 42 years old at trial, "was recently promoted, . . . making more money now than ever before[, and] has $74,000 in her checking account." *Id.* at 39. Husband then compares himself: he "is 62 years old and recently had to reenter the work force . . . so that he could save enough money . . . to retire again on his own[, and] is contributing a large share of his paycheck to his retirement account." *Id.* at 40. Husband also points out Wife was apportioned no debt while he was allocated the $121,530 construction loan on the Kittanning property as well as the outstanding $72,787 mortgage on the marital residence. *Id.* at 42.

In his fourth issue, Husband asserts the trial court failed to appropriately consider his budget and monthly expenses of $7,823.27. Husband's Brief at 45. Specifically, he reasons the court failed to consider, as a monthly expense, the costs of building or maintaining the Kittanning property, including the monthly $412 payment on the construction loan. *Id.* at 48-49. Husband disputes the trial court's characterization of the Kittanning property as an investment, arguing the parties jointly decided, pre-separation, to construct this house, and thus the construction loan should be considered a mortgage

payment. *Id.* at 47-48. Husband further contests the court's rejection, as a proper expense, of his monthly charitable contributions of $575, which includes $500 monthly to his church. *Id.* at 49. He claims this was a regular monthly contribution throughout the parties' marriage. Husband concludes he "relied on the marriage continuing, and would not have made the same financial decisions but for the fact that the parties were married." *Id.* at 50.

Finally, in his fifth issue, Husband avers the trial court erred in failing to consider his retirement contributions when determining equitable distribution and alimony. He maintains that 55% of the marital estate, "when compared with [sic] the failure of the trial court to award alimony," is insufficient. Husband's Brief at 56. He reasons, "The parties had a mutual understanding during the marriage that Husband should retire. This was the lifestyle and standard of living the parties[ ] chose." *Id.* at 57. We conclude no relief is due.

Preliminarily, we note:

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been "overridden or misapplied or the judgment exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. "[W]e measure the circumstances of the case against the objective of

effectuating economic justice between the parties and achieving a just determination of their property rights."

**Balicki v. Balicki**, 4 A.3d 654, 662-63 (Pa. Super. 2010) (citations omitted).

Section 3502(a) of the Divorce Code[6] sets forth the relevant factors in fashioning an equitable distribution award:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

---

[6] 23 Pa.C.S. §§ 3101-3904.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a)(1)-(11).

With respect to these statutory factors, this Court has stated:

We do not evaluate the propriety of the distribution order upon our agreement with the court['s] actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall application of the [23 Pa.C.S.A. § 3502(a)] factors [for consideration in awarding equitable distribution]. If we fail to find an abuse of discretion, the [o]rder must stand.

"The trial court has the authority to divide the award as the equities presented in the particular case may require."

***Childress v. Bogosian***, 12 A.3d 448, 462 (Pa. Super. 2011) (citations omitted).

Here, the trial court addressed Husband's claims as follows:

Husband next complains that I did not properly consider his budget and expenses. Contrary to this assertion, I carefully and independently reviewed them and found that both were, in many respects, unreasonable and/or artificially inflated.

I found that Husband's proffered budget was replete with entries that do not represent reasonable needs. Husband put forth a monthly budget of $7,823, which included dining out "not always alone," as well as $575 per month in charitable contributions to his church. Wife cannot be reasonably expected to finance either of these discretionary pursuits — dinner dates

- 16 -

and a new found desire to tithe which was not practiced during the marriage — through payment of alimony, a needs based remedy.

Husband contends that my budgetary analysis did not consider how the assets he was awarded in equitable distribution will impact his budget. Specifically, Husband testified that the Kittanning property will require significant time and money to complete. He characterized the costs associated with construction as expenses, yet testified that upon completion of the house, he would either sell it or reside in it. I found that the costs associated with the Kittanning property would be more aptly classified as investments than expenses. . . . Husband intends to profit from the completion of the Kittanning property. Wife should not be forced to fund Husband's investments.

Husband also complains that his contributions to his retirement were not considered, but he is again mistaken. That Wife was not required to finance his retirement savings does not mean that his savings were not taken into consideration. Husband contributes $3,467 per month into his current retirement account, leaving him with monthly net income of $2,881 per month. He claims he therefore needs approximately $5[,]000 per month in alimony to meet the meet his $7,000 budget. Husband's complaint is, essentially, that he was counting on Wife's income to fund his retirement and he wants to continue to do so.

Husband's position fails for a number of reasons. First, Wife's substantial income came quite late in the parties' relatively short marriage. Secondly, Husband was awarded 55% of this substantial marital estate including a transfer of cash from Wife with which to shore up his current savings. Third, Husband was awarded, **at his request**, the three real estate properties, one of which is currently income producing. Additionally, Husband will be entitled to receive social security as well as a small pre-marital pension when he retires.

Most importantly, the parties were married for only 10 years and Husband had a long working career prior to marriage during which to prepare for his retirement, and was still earning a substantial salary at the time of trial. To require Wife to be substantially responsible for funding Husband's retirement savings after a 10 year marriage, however, is not appropriate.

Trial Ct. Op. at 9-10 (emphasis added).

After careful review of Husband's copious arguments, the certified record, and the trial court's opinion, we conclude the court did not abuse its discretion in adopting the master's recommendation to effectuate the equitable distribution scheme. On appeal, Husband focuses only on the facts advantageous to his position, while ignoring the trial court's reasoned discussion that, following a 10-year marriage, which Husband entered following "a long working career," that Wife should not be compelled "to be substantially responsible for funding [his] retirement savings." *See* Trial Ct. Op. at 10. Furthermore, the trial court's discussion of the details of Husband's claims supports the court's reflection that it did, in fact, carefully consider Husband's financial circumstances and monthly expenses. Under the facts and discussion presented, that the court did not grant everything Husband wished for does not evince an abuse of discretion. *See Childress*, 12 A.3d at 462; *Balicki*, 4 A.3d at 662-63.

## VII. Alimony

In Husband's sixth issue, he avers the trial court failed to appropriately consider the alimony factors pursuant to 23 Pa.C.S. § 3701, and "instead seemingly reverse[ ] engineered [the court's] desired result of" awarding no alimony. Husband's Brief at 51-52. He contends that his request for eight years of alimony, at the same monthly rate of $5,517.50 for APL, was appropriate. *Id.* at 51. Husband reiterates Wife's seemingly superior financial

circumstances — including her 2017 income was $307,000, compared to his $94,000 — and maintains he cannot meet his own reasonable needs based on his income and 55% of the marital estate. *Id.* at 53-54. Husband calculates that the denial of alimony "results in Wife having more than double the income as Husband, and does not effectuate economic justice between the parties." *Id.* at 55. We conclude no relief is due.

"An award of alimony may be reversed where there is an apparent abuse of discretion or there is insufficient evidence to support the award." *Balicki*, 4 A.3d at 659. This Court has stated:

> Following divorce, alimony provides a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution. An award of alimony should be made to either party only if the trial court finds that it is necessary to provide the receiving spouse with sufficient income to obtain the necessities of life. "The purpose of alimony is not to reward one party and punish the other, but rather to ensure that the reasonable needs of the person who is unable to support herself through appropriate employment are met."
>
> "Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay." . . .

*Id.* (citations omitted).

Section 3701(b) of the Divorce Code provides:

> **(b) Factors relevant. —** In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors, including:
>
> > (1) The relative earnings and earning capacities of the parties.

- 19 -

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S. § 3701(b)(1)-(17).

We consider the trial court's reasons for denying Husband's claim for alimony:

Husband was, at the time of trial, earning a significant salary, he did not contribute to Wife's earning capacity nor act as a homemaker. Wife was not earning her significantly higher salary until the end of this relatively short marriage and so did not establish a standard of living for Husband which would obligate her to the alimony Husband asks.

Husband has asked for eight years of alimony at $5[,]517 per month, despite receiving a substantial share of a rather large marital estate. He did not demonstrate, however, that he is unable to earn enough to meet his reasonable needs. He demonstrated only that he cannot have absolutely everything he wants without alimony.

Husband claimed in his testimony that he cannot complete the Kittanning house without receiving alimony for a substantial period of time. Husband figured out the amount of money and time required to complete the house and determined that, without alimony, he cannot complete it. Husband's desire for his dream house should not be a basis for alimony.

In order to meet his future needs, Husband was awarded a greater share of the estate. Husband was given three pieces of real estate — which he wanted — along with funds from Wife's retirement account. Husband earns over $90,000 per year and one of the properties he was awarded is income producing. Additionally, this was a relatively short marriage. Husband has

- 21 -

been receiving substantial APL since separation. I found Husband's request for 8 more years of alimony after a ten year marriage to be unreasonable when viewed in the entire scheme of the distribution.

Throughout the pendency of this case, Husband has focused almost solely on Wife's ability to pay alimony from her significant income. The payor's ability to pay is but one of the factors to be considered when determining whether to award alimony. . . . While Wife may have the financial ability to pay alimony, it would not be fair or just to require her to do so when Husband has not demonstrated he has the actual need and Husband has already been protected through the skewing of the equitable distribution award.

Trial Ct. Op. at 12-13.

Again, Husband's argument ignores significant portions of the trial court's rationale. Husband does not dispute, let alone address, the court's points that: he was awarded a greater share of the marital estate; his request for three pieces of real property — one of which is income producing — was granted; he had already received, at the time of the trial court's writing, 8 years of APL following a 10-year marriage; Husband himself earned a significant salary; and the fact of Wife's ability to pay is but one of the Section 3701 factors. Instead, Husband would have this Court reevaluate only the factors seemingly in his favor. This we cannot do. *See Balicki*, 4 A.3d at 659.

## VIII. Counsel Fees

Husband's seventh claim of error relates to the trial court's denial of his request for attorney's fees. Husband's Brief at 59, 61. Husband states "there is no testimony on the record regarding any dilatory or unnecessary conduct,"

- 22 -

and "Wife's failure to include any value for the Kittanning Property in her Pre-Trial statement specifically caused Husband to incur additional costs and attorney's fees." *Id.* at 61-62. Husband points out that although he requested $10,000 at trial, and "given the continued expense incurred . . . through the appeals process," he now requests $20,000, "which is still [less than] the $30,000 he incurred leading up to trial." *Id.* at 63. Finally, Husband claims he "was not awarded a large amount of cash/liquid assets in equitable distribution which he could use to satisfy his attorney's fees and Wife is in a financial position to make a contribution based on the division of assets and liabilities and the fact she is not required to pay alimony." *Id.* We determine no relief is due.

Our standard of review is as follows:

> [W]e examine whether the court below abused its discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial [dis]advantage; the parties must be 'on par' with one another. Moreover, counsel fees are awarded only upon a showing of need.

> "Counsel fees are awarded based on the facts of each case after a review of all the relevant factors." "These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution."

*Smith v. Smith*, 904 A.2d 15, 21 (Pa. Super. 2006) (citations omitted).

Here, the trial court denied Husband's claim for attorney fees after finding:

> [W]hile Wife certainly has the ability to pay, Husband also has the financial resources to meet his counsel's fees.
>
> As noted previously, Husband has for years received significant monthly APL during the pendency of this case which puts the parties "on par." It was within my discretion to determine that any further award of counsel fees was not necessary based on the APL award in Husband's favor.[ ]

Trial Ct. Op. at 14.

Husband fails to address the trial court's reasoning and ignores the court's consideration of the fact he has received a "significant" monthly APL for eight years. *See* Trial Ct. Op. at 14. In light of the trial court's finding and our standard of review, we conclude the court properly exercised its discretion in declining to award counsel fees. *See Smith*, 904 A.2d at 21.

## IX. Conclusion

As Wife has abandoned her claim for relief on appeal, and we conclude none of Husband's claims are meritorious, we affirm the trial court's order of equitable distribution.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/28/2021