J-A11014-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JULIE S. SELWOOD | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL J. SELWOOD | |
| Appellant | No. 1214 WDA 2013 |

Appeal from the Decree June 28, 2013
In the Court of Common Pleas of Allegheny  County
Family Court at No(s): FD-10-007983-008

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E. and OLSON, J.

MEMORANDUM BY OLSON, J.:                    **FILED JULY 31, 2014**

Appellant, Michael J. Selwood ("Husband"), appeals from the decree of divorce entered June 28, 2013.  We affirm in part, reverse in part, and remand.

As we write solely for the parties, we only outline the portions of the factual and procedural history of this case necessary to our disposition. Husband married Julie S. Selwood ("Wife") on July 22, 1995.  Their marital union produced three children, 17-year-old C.S., 14-year-old A.S., and nine-year-old T.S.  Wife works as a part-time teacher while Husband works as a bankruptcy and restructuring consultant.[1]  On April 5, 2010, the parties separated.  On May 24, 2010, Husband signed a new employment contract.

---

[1]  Husband avers that less than a week after the decree of divorce was entered he was laid off.

As part of that contract, Husband was given restricted stock, stock options, and a forgivable loan.

Prior to marriage, Wife opened an investment account with Janney Montgomery Scott ("JMS account"). The account was funded by Wife's family. At the time the parties were married, the account had a balance of $29,253.29. During their marriage, Wife received approximately $134,121.00 in gifts from her family which she deposited in her JMS account. At the time Wife and Husband separated, the account had a balance of $158,395.93. Also prior to marriage, Wife and her brother were owners of a second-to-die policy on the lives of their parents. During the marriage, that policy was rolled over into a new policy.

On July 23, 2010, Wife filed a complaint in divorce. The resulting litigation has been acrimonious and has exhausted a great deal of judicial resources. The parties' disputes over the equitable distribution of marital property and alimony were submitted to a special master ("master"). The master held a six day trial, four days in May 2012 and two days in September 2012. Prior to the two days in September 2012, Wife filed a supplemental pre-trial statement. The master permitted Wife to present evidence included in her supplemental pre-trial statement that was not included in Wife's original pre-trial statement. On October 26, 2012, the master submitted a report and recommendation to the trial court.

Wife filed exceptions to the master's report and recommendation on November 9, 2012. Husband then filed cross-exceptions. On May 20, 2013, the trial court granted in part and denied in part Wife's exceptions and denied Husband's exceptions. The trial court determined that Wife's JMS account and the life insurance policy held jointly by Wife and her brother were non-marital property. The trial court also ordered Husband to maintain life insurance to insure his future alimony and child support obligations. The previous alimony *pendente lite* ("APL") and child support payments for 2011 and 2012 were retroactively made allocated instead of unallocated. The trial court ordered Husband to pay for any extracurricular activities in which the parties' children wished to participate. Finally, the trial court awarded Wife alimony and counsel fees. On June 28, 2013, the trial court entered a decree of divorce. This timely appeal followed.[2]

Husband raises seven issues for our consideration:

1. [Did t]he trial court abuse[] its discretion in reversing the [m]aster's determination that Wife's JMS account [] was marital property[?]

2. [Did the trial court abuse[] its discretion by (a) granting Wife's petition to enforce and limit amended pre-trial statements and (b) permitting Wife to present evidence that was only identified in a belatedly filed amended pre-trial statement?]

3. [Did t]he trial court abuse[] its discretion in failing to designate as marital property any component of the life

---

[2] Husband and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

insurance policy titled in the joint names of Wife and her brother[?]

4. [Did t]he trial court abuse[] its discretion in ordering Husband to maintain life insurance coverage to secure his [child] support and alimony obligations[?]

5. [Did t]he trial court abuse[] its discretion in retroactively modifying the unallocated [APL] and child support awards for 2011 and 2012 by making them allocated[?]

6. [Did t]he trial court abuse[] its discretion in vacating the [m]aster's determination that Husband pay his share of the children's expenses for extracurricular activities that both parents agree upon, and instead delegating final authority to the children to bind their parents to the cost of their activities[?]

7. [Did t]he trial court abuse[] its discretion in awarding both alimony and legal fees to Wife in the absence of actual need[?]

Husband's Brief at 4-6.[3]

Our standard of review is well settled.

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

---

[3] We have re-numbered the issues for ease of disposition.

- 4 -

*Reber v. Reiss*, 42 A.3d 1131, 1134 (Pa. Super. 2012) (citation omitted). We likewise review a trial court's award of attorney fees in a divorce action for an abuse of discretion. *See S.M.C. v. W.P.C.*, 44 A.3d 1181, 1190 (Pa. Super. 2012).

In his first issue on appeal, Husband claims that the trial court abused its discretion in determining that Wife's JMS account was not marital property. The master found that Wife's JMS account contained both marital and non-marital assets. However, the master determined that it was not possible to determine what portions of the JMS account was marital property. Therefore, she concluded that she was required to consider the full amount of the JMS account as marital property. Wife filed an exception to this portion of the master's report and recommendation, arguing that the JMS account was solely non-marital property.

The trial court determined, based upon Wife's testimony and the testimony of Richard F. Brabender, Esq. ("Brabender"), an expert witness called by Wife, that the account was not marital property. The trial court determined that all deposits into Wife's JMS account were gifts to Wife from her family. The trial court further found that all marital expenses paid from Wife's JMS account were paid from marital growth in the account. Therefore, the trial court sustained Wife's exception relating to her JMS account.

On appeal, Husband argues that the trial court overturned a credibility determination made by the master. However, the master's report and recommendation does not include any credibility determination as to this issue. The master did not find that Wife or Brabender's testimony was not credible. Instead, the master found that, because it was impossible to determine the exact amount of marital property in Wife's JMS account, the full amount must be considered marital property.

Under Pennsylvania law, "[a]ll real or personal property acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership[.]" 23 Pa.C.S.A. § 3501(b). However, "[p]roperty acquired prior to marriage or property acquired in exchange for property acquired prior to the marriage" and "[p]roperty acquired by gift, except between spouses, bequest, devise or descent or property acquired in exchange for such property" is non-marital property. 23 Pa.C.S.A. § 3501(a)(1,3); *see* 23 Pa.C.S.A. § 3501(b). Even if the property were acquired prior to marriage or by gift, any increase in the value of that property during the marriage is marital property. 23 Pa.C.S.A. §§ 3501(a), 3501(a.1).

We agree with the trial court that Wife's JMS account was non-marital property. The undisputed evidence presented at trial showed that between her pre-marital balance and gifts received from her family, Wife's JMS account included over $163,000.00 in non-marital assets. *See, e.g.*, Trial

Exhibits V, W, X, Y, Z, AA, BB, and CC. There was no testimony or evidence presented that Wife made any personal expenditures from the JMS account.

Instead, the undisputed evidence was that Wife made approximately $37,000.00 worth of marital expenditures from the JMS account. Wife's expert testified at trial that he assumed for the purposes of his analysis that those funds were the increased value of the JMS account during marriage, which would be a marital asset. Husband attacks this assumption, arguing that the expenditure of funds from Wife's JMS account proves that it was a marital asset. However, this is simply not the case. The statute is clear, only the increase in value of any non-marital property acquired prior to marriage or through gift is marital property.

With an asset like the JMS account, there was likely to be some increase in value of the non-marital property. Wife could have chosen to keep those marital funds with her non-marital funds in the JMS account. However, there was no requirement that she do so. Instead, there was testimony that showed she chose instead to use the marital portion of the JMS account to pay for marital expenses. There was nothing improper about Wife's actions or the trial court's findings with respect to this issue. As such, the fact that Wife used the marital portion of her JMS account to pay for marital expenses did not tend to prove that the entire account was marital property.

Husband cites *Busse v. Busse*, 921 A.2d 1248 (Pa. Super. 2007), *appeal denied*, 934 A.2d 1275 (Pa. 2007), and *Winters v. Winters*, 512 A.2d 1211 (Pa. Super. 1986), for the proposition that the co-mingling of funds caused the JMS account to become marital property. However, both *Busse* and *Winters* are easily distinguishable. In *Busse*, the husband had a pre-marital account. *Busse*, 921 A.2d at 1257. The husband admitted that he deposited funds into his pre-marital account during the course of the marriage. *Id.* Furthermore, he admitted that he combined his pre-marital account with various marital accounts. *Id.* These deposits and the merging of a pre-marital account with marital accounts caused his pre-marital funds to become marital property. None of those facts are present in the case at bar. To the contrary, Wife testified that she never deposited marital property into her JMS account. Husband offered no testimony or evidence to the contrary.

In *Winters*, this Court expressly rejected the same argument being made by Husband in the case at bar. In particular, we noted that the comingling of assets does not result in the funds being transmuted from non-marital property to marital property. *Winters*, 512 A.2d at 1215, *citing* *Anthony v. Anthony*, 514 A.2d 91 (Pa. Super. 1986) (*en banc*). As we noted in *Anthony*, this aspect of the Commonwealth's Divorce Code differs from that in many other jurisdictions. *Anthony*, 514 A.2d at 94. Taking Husband's argument to its logical conclusion, any time a non-marital asset

were to appreciate in value the asset would be converted to a marital asset because the non-marital and marital portions of the asset would be comingled. That would be an absurd result. Accordingly, we conclude that the trial court correctly determined that Wife's JMS account was a non-marital asset.

In his second issue on appeal, Husband challenges two procedural determinations by the trial court. We conclude that both challenges are waived. First, Husband contends that the trial court abused its discretion by granting Wife's petition to enforce and limit amended pre-trial statements. In that petition, Wife sought to enforce prior court orders relating to discovery by ending discovery 30 days prior to trial and requiring all pre-trial statements be filed 15 days prior to trial.

As this Court has explained, Pennsylvania Rule of Appellate Procedure 2119 compels a finding of waiver "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review[.]" **Tosi v. Kizis**, 85 A.3d 585, 589 n.6 (Pa. Super. 2014) (citation omitted). In the argument section of his brief, Husband never addresses the trial court's order granting Wife's petition to enforce and limit amended pre-trial statements in a meaningful manner. "[W]e decline to become the appellant's counsel. When . . . briefs are wholly inadequate to present specific issues for review, [this] Court will not consider the merits thereof."

*Branch Banking & Trust v. Gesiorski*, 904 A.2d 939, 942–943 (Pa. Super. 2006) (internal alteration and citation omitted). Accordingly, Husband's contention that the trial court abused its discretion in granting Wife's petition to enforce and limit amended pre-trial statements is waived.

Next, Husband challenges the master's decision to permit Wife to introduce, at the September portion of the trial, evidence relating to the life insurance policy maintained by Wife and her brother. "Matters not covered by exceptions [to a master's report and recommendation] are deemed waived unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters." Pa.R.C.P. 1920.55-2(b); *Hayward v. Hayward*, 868 A.2d 554, 561 (Pa. Super. 2005). Less than a week before the trial was to resume, Wife filed a supplemental pre-trial statement which included the new exhibits. Husband filed a motion *in limine* requesting that the exhibits be excluded as they were untimely filed with the master. The master heard argument on the motion *in limine* and deferred ruling until after the evidence was presented. After the evidence was presented, the master denied the motion *in limine*. Husband did not object to the admission of these exhibits in his cross-exceptions. *See* Husband's Cross-Exceptions, 11/19/12. Instead, Husband only objected to the master's determination that the life insurance policy was non-marital property. *See id.* at 2. Accordingly, his argument that the master erred by permitting the exhibits into evidence is waived.

In his statement of questions involved, Husband argues that the master erred by admitting evidence related to Wife's insurance policy and the JMS account despite Wife's incorrect certification that she owned no interest in life insurance policies and failure to produce evidence in discovery related to the JMS account. **See** Husband's Brief at 5-6. These arguments are also waived. **See** Pa.R.A.P. 2119(a). As such, all of the arguments raised in Husband's second issue on appeal are waived.

In his third issue on appeal, Husband contends that the trial court erred by designating the life insurance policy held by Wife and her brother as a non-marital asset.[4] Husband contends that the evidence used by Wife to prove the non-marital status of the property should have been excluded by the master. Husband also contends that, even with that evidence, at least some portion of the insurance policy should be considered marital property. The trial court found that the premiums for the policy were paid by Wife's parents. Wife contends that the policy was non-marital property as the parties' joint bank account merely acted as a conduit to transfer the payments from Wife's parents to the insurance company.

As we have noted above, Husband has waived his argument relating to the admission of evidence at the September 2012 portion of the trial. As such, we must view all of the evidence presented during the trial, including

---

[4] To be more precise, the exact asset is "the cash surrender value of [the] life insurance policy[.]" **Yuhas v. Yuhas**, 79 A.3d 700, 707 n.1 (Pa. Super. 2013) (citations omitted).

the evidence belatedly produced by Wife, when determining if any portion of the insurance policy is marital property.

First, Wife presented evidence that the insurance policy, which was issued during the marriage, arose from a life insurance policy issued prior to the marriage that was later rolled over into a new policy. *See* N.T., 9/10/12, at 66-67. Husband offered no evidence to the contrary. As such, the trial court's determination that the value of the insurance policy at the time of marriage is non-marital property is supported by the record. *See* 23 Pa.C.S.A. § 3501(a)(1). Thus, the issue is whether the increase in the value of the life insurance policy (and its predecessor policy) from the time of marriage until the parties' separation is a marital asset.

We conclude that a portion of the increase in the value of the policy is marital property and a portion is non-marital property. Wife testified and presented documentary evidence that her parents gave her gifts which she then spent on the life insurance premiums. *See* N.T., 9/10/12, at 67; Exhibits PPP2, RRR, QQQ. There was no evidence presented that Wife ever paid life insurance premiums from the joint checking account with funds that were not a gift from Wife's parents. As such, the appreciation in value of the life insurance policy that derived from the continued premium payments was property acquired in exchange for a gift. Such property is non-marital. *See* 23 Pa.C.S.A. § 3501(a)(3). However, Wife also admits in her brief that the life insurance policy earned interest and dividends. *See* Wife's Brief at 17,

*citing* Exhibit 16. Wife avers that a portion of the interest and dividends was used to pay the difference between the premiums paid by Wife's parents and the total premiums owed on the policy. Wife also admits that the value of the policy increased as a result of the interest and dividends earned on the account.

Wife's portion of the interest and dividends earned by the life insurance policy, whether used to pay premiums or to increase the value of the policy, is marital property. *See* 23 Pa.C.S.A. § 3501(a). We therefore reverse the trial court's determination that the full life insurance policy was non-marital property. In the interest of judicial economy, we direct the trial court on remand to determine the value of the insurance policy that was marital property. The trial court shall then determine what percentage of the marital asset, if any, should be awarded to Husband and what percentage should be awarded to Wife. After making any required adjustment for taxes, Husband shall be awarded a credit on the equitable distribution of liquid assets in that amount.

In his fourth issue on appeal, Husband argues that the trial court abused its discretion by requiring him to maintain life insurance to secure his child support and alimony obligations. The trial court determined that the cost of insuring Husband's alimony and child support obligations was minimal compared to the significant benefits to Wife and the parties' three minor children. Trial Court Opinion, 10/29/13, at 8. Wife contends that

section 3502(d) authorized the trial court to require Husband to maintain his life insurance. Husband contends that section 3707 barred the trial court from requiring him to maintain life insurance. To the extent that this issue requires us to interpret a statute, our standard of review is *de novo* and our scope of review is plenary. *See Pilchesky v. Lackawanna Cnty.*, 88 A.3d 954, 965 (Pa. 2014) (citation omitted).

The maintenance of an insurance policy is governed by section 3502(d), which provides that:

> The court may direct the continued maintenance and beneficiary designations of existing policies insuring the life or health of either party which were originally purchased during the marriage and owned by or within the effective control of either party. Where it is necessary to protect the interests of a party, the court may also direct the purchase of, and beneficiary designations on, a policy insuring the life or health of either party.

23 Pa.C.S.A. § 3502(d). Furthermore, section 3707 provides that, "Upon the death of the payee party, the right to receive alimony pursuant to [the Divorce Code] shall cease. Upon the death of the payor party, the obligation to pay alimony shall cease unless otherwise indicated in an agreement between the parties or an order of court." 23 Pa.C.S.A. § 3707.

In support of his argument, Husband relies upon *Balicki v. Balicki*, 4 A.3d 654, 667 (Pa. Super. 2010). However, our holding in *Balicki* regarding life insurance was narrow. In that case, we determined that the trial court did not abuse its discretion in declining to order the husband to maintain a life insurance policy. *Id.* at 667. We stated that because the husband's

- 14 -

alimony requirement ceased upon his death, there was no obligation to maintain life insurance to secure alimony payments after his death. **Id.** (citations omitted). We did not say, however, that it would be an abuse of discretion for a trial court to order a party to maintain life insurance in order to secure alimony obligations after death. **See id.**

Section 3707 specifically provides that alimony obligations only cease upon death of the payor if there is no agreement of the parties or court order to the contrary. **See** 23 Pa.C.S.A. § 3707. In the case *sub judice*, the trial court determined that Husband's obligation to make alimony payments should not terminate upon his death. Such a determination is clearly permitted by section 3707. Thus, because Husband was required to continue making alimony payments even if he passed away, the trial court was authorized by section 3502(d) to require that Husband maintain life insurance to secure his future alimony obligations.

Husband also relies upon **Benson ex rel. Patterson v. Patterson**, 830 A.2d 966 (Pa. 2003), in support of his argument that child support obligations end at death. In **Patterson**, our Supreme Court determined that an estate could not be sued for child support. **Id.** at 969-970. In so doing, our Supreme Court examined the laws of our sister states relating to child support obligations upon death. **Id.** at 968-969. Our Supreme Court concluded that "the majority of jurisdictions have held, in the absence of a contract **or an express provision in a judicial decree** (**e.g.**, divorce

decree, child support order), that the duty to support minor children ends at death." *Id.* at 968 (emphasis added). It then adopted the majority position when determining that the estate had no duty to pay child support. *Id.* at 969.

In so adopting the majority rule, our Supreme Court implicitly held that an express provision in a judicial decree could make a child support obligation continue, even upon the death of the payor. In this case, the trial court explicitly provided for child support payments to continue upon Husband's death by compelling him to maintain his life insurance policy. Therefore, the trial court had the authority to order that Husband maintain his life insurance policy to secure his alimony and child support payments.

We also conclude that the trial court's choice to exercise its section 3502(d) authority was not an abuse of discretion. We agree with the trial court that Husband's earning potential is much higher than Wife's earning potential. *See* Trial Court Opinion, 10/29/13, at 8. Furthermore, the trial court's balancing of the cost of the increased insurance compared to the benefits afforded the parties' children is supported by the record. The cost to maintain the life insurance is relatively small when compared to the impact upon the children of losing the financial stability that Husband's child support and alimony payments provide Wife. Accordingly, we conclude that Husband's fourth issue on appeal is without merit.

In his fifth issue on appeal, Husband argues that the trial court abused its discretion by retroactively making his APL and child support awards for 2011 and 2012 allocated instead of unallocated. In its Rule 1925(a) opinion, the trial court concedes that remand on this issue may be appropriate. **See** Trial Court Opinion, 10/29/13, at 9-10. Wife argues that it was correct for the trial court to retroactively allocate the APL and child support because it reduced Wife's tax burden.

Pennsylvania Rule of Civil Procedure 1910.15-4 provides, in relevant part, that "if an order is to be allocated, an adjustment shall be made to the award giving consideration to the federal income tax consequences of an allocated order as may be appropriate under the circumstances." Pa.R.C.P. 1910.16-4(f)(1). It is evident from the record, and the trial court's opinion, that no such consideration was given. Wife's argument that it wasn't "appropriate under the circumstances" is without merit. There is no evidence that the trial court made such a determination that it was not appropriate under the circumstances. As such, the trial court abused its discretion in failing to consider the federal tax implications of retroactively making the payments allocated.

Furthermore, as a matter of law, the APL and child support payments for 2011 and 2012 must remain unallocated. Wife already filed her income tax returns for 2011 and 2012 listing the awards as unallocated. Wife would not be able to file an amended tax return to reap the benefits of the

allocation order. **See, e.g., Smith v. Comm'r**, T.C. Summ. Op. 2010-15 (2010) (citations omitted); **Novak v. Comm'r**, T.C. Summ. Op. 2009-185 (2009) (citations omitted); **Johnson v. Comm'r**, 45 T.C. 530, 532-533 (1966); **see also** Rev. Rul. 71-416. Thus, there would be no benefit to retroactively making the APL and child support allocated. The only result of such action would be to cause confusion and possible further expenses for the parties. Accordingly, we will reverse the trial court's order retroactively making the APL and child support allocated. Upon remand, the trial court is directed to reinstate its order which made the APL and child support payments for 2011 and 2012 unallocated.

In his sixth issue on appeal, Husband argues that the trial court abused its discretion by requiring him to pay for 91% of the children's extracurricular activities because he should not be required to pay for activities in which he does not believe the children should participate. Wife claims that this portion of Husband's appeal should be quashed as it attacks the custody order, not the child support order. Wife also defends this requirement as she argues that Husband may be relieved of his obligation to pay for certain extracurricular activities by filing a motion with the trial court.

We first address Wife's argument that Husband's challenge to this portion of the child support order should be quashed. When the briefs in this matter were filed, Husband's appeal of the custody order was still pending.

However, after briefing was completed in this case, this Court vacated the child custody order and remanded the matter to the trial court to expressly consider the statutory best interest factors. **See J.S.S. v. M.J.S.**, 641 WDA 2013 (Pa. Super. Feb. 11, 2014) (unpublished memorandum). After remand, the trial court filed an opinion addressing each of the best interest factors. **See** Trial Court Opinion, 3/6/14. Husband then filed a new appeal to this Court from the child custody determination. **See J.S.S. v. M.J.S.**, 850 WDA 2014. In his Rule 1925(b) statement in that case, Husband does not challenge the portion of the trial court's custody order which provides that, "[b]oth parties are directed to honor and participate in the activities in which the child[ren] wish[] to engage." Child Custody Order, 1/18/13, at 10.

We conclude that Husband's challenge is properly before this Court because he seeks to be relieved of his obligation to pay for the children's extracurricular activities. **See** Husband's Brief at 37. Such relief is properly granted from the child support order and not the child custody order. However, certain aspects of Husband's argument are not properly before this Court. For example, Husband's argument that he has a right to rear his children in the manner he deems fit is properly construed as a challenge to the child custody order and not the child support order. Thus, we will not address those portions of Husband's argument that challenge the child custody order but confine our review to his challenge to the requirement

that he pay for extracurricular activities in which the children choose to participate.

> Pennsylvania Rule of Civil Procedure 1910.16-6(d) provides that:
>
> The support schedule does not take into consideration expenditures for private school tuition or other needs of a child which are not specifically addressed by the guidelines. If the court determines that one or more such needs are reasonable, the expense thereof shall be allocated between the parties in proportion to their net incomes. The obligor's share may be added to his or her basic support obligation.

Pa.R.C.P. 1910.16-6(d).

A parent can be required to pay for extracurricular activities under Rule 1910.16-6(d), even if he or she does not believe they are necessary, when the activities are beneficial to the child in question and "the expenses associated with these activities are consistent with the family's standard of living and station in life." *Silver v. Pinskey*, 981 A.2d 284, 302 (Pa. Super. 2009) (*en banc*), *citing* *Holland v. Holland*, 663 A.2d 768 (Pa. Super. 1995); *Marshall v. Marshall*, 591 A.2d 1060 (Pa. Super. 1991).

In this case, the trial court found that Husband refused to pay for extracurricular activities in bad faith. *See* Trial Court Opinion, 10/29/13, at 10-11. Thus, instead of imposing the burden upon Wife to file a motion every time a child wanted to participate in a particular activity, the trial court shifted the burden to Husband to file a motion when he believed that an activity was not beneficial or consistent with the family's standard of living

and situation in life. We agree with the trial court that this step was a "rather extraordinary solution." *Id.* at 11.

We conclude, however, that this extraordinary solution was not an abuse of discretion. The trial court found that husband unreasonably, and in bad faith, withheld payments for reasonable extracurricular activities. *See id.* at 10-11. This finding is supported by the record. At a hearing on November 15, 2011, Husband testified to his position regarding the children's activities. *See* N.T., 11/15/11, at 193-199. He testified that he was only willing to pay for activities to which he had agreed. *Id.* at 194-195. The trial court actively questioned Husband with respect to this issue in order to ascertain his position with respect to extracurricular activities. *See id.* at 193-197. Thus, we conclude that the trial court was presented with evidence that Husband unreasonably refused to pay for the children's activities and crafted a unique solution that ensured the children are able to participate in appropriate activities. In addition, the trial court provided Husband with the opportunity to challenge certain expenditures. Accordingly, Husband's sixth issue on appeal is without merit.

In his final issue on appeal, Husband challenges the trial court's decision to award alimony and counsel fees to Wife. We first consider the trial court's award of alimony. Husband argues that Wife did not have any need for alimony because her income was sufficient to cover her expenses. The trial court found that the alimony was necessary to maintain Wife's

standard of living while she attempted to garner full-time employment. Wife defends the trial court's award of alimony arguing that the award merely permitted Wife to maintain her standing of living.

"Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay." ***Kent v. Kent***, 16 A.3d 1158, 1161 (Pa. Super. 2011), *appeal denied*, 29 A.3d 797 (Pa. 2011) (citation omitted). When determining if alimony is appropriate, the trial court must consider the following 17 factors:

> (1) The relative earnings and earning capacities of the parties.
>
> (2) The ages and the physical, mental and emotional conditions of the parties.
>
> (3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
>
> (4) The expectancies and inheritances of the parties.
>
> (5) The duration of the marriage.
>
> (6) The contribution by one party to the education, training or increased earning power of the other party.
>
> (7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.
>
> (8) The standard of living of the parties established during the marriage.
>
> (9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S.A. § 3701(b)(1-17).

Husband argues that many of the statutory factors weigh in favor of a smaller alimony award. All of Husband's arguments are without merit. First, Husband argues that the gap in the parties' earnings and earning capacities was not as large as it appeared. However, the exhibits entered into evidence show that Husband earned over 13 times more than Wife in 2010. *See* Exhibits U, 13. Furthermore, even if Husband's expert's testimony were accepted, Husband had an earnings potential 5 times that of Wife. These

figures indicate that the first statutory alimony factor weighed in favor of a large alimony award.

Husband contends that the other sources of income for the parties weighed in favor of a lower alimony award. He lists the many other forms of income available to Wife. However, it is at this point in his brief that Husband fails to recognize the forgivable loan, restricted stock, and stock options that the trial court found to be non-marital property. When these are considered, the third factor does not weigh in favor of a smaller alimony award. In fact, it may weigh in favor of a larger alimony award.

Husband also argues that the duration of the marriage weighs in favor of a smaller alimony award. Husband uses Wife's requested alimony in order to advance his position. The reason is obvious; the length of alimony and APL actually ordered by the trial court was less than the duration of the marriage. Thus, Husband's argument that the fifth statutory factor weighs in favor of a smaller alimony award is without merit.

Husband contends that the relative education of the parties and the time necessary for Wife to find appropriate employment weighs in favor of a smaller alimony award. He contends that throughout the course of the divorce litigation, Wife did not attempt to further her education or gain other employment skills. It is only in this section of his brief that Husband compliments Wife's "skills, education, and intelligence[.]" Husband's Brief at 29. However, even with these qualities, it is not possible for Wife to find

appropriate employment immediately. As such, the trial court's determination that Wife needed five years to garner such employment was not an abuse of discretion.

Husband argues that the relative needs of the parties weigh in favor of a smaller alimony award. However, Husband is using his own calculations regarding Wife's budget, not the calculations submitted to the trial court by Wife. Wife listed $1,722.37 per month in income and $5,015.50 in expenses. Exhibit SS. Thus, Husband's argument is without merit.

Furthermore, Husband ignores the eighth statutory factor, the standard of living established by the parties during their marriage, which this Court has repeatedly stated is the key in determining the size of an alimony award. Instead, he argues that Wife should only receive alimony based upon a lower standard of living. For example, Husband argues that certain "discretionary" expenses should not be included in Wife's monthly expenditures. *See* Husband's Brief at 26-27. The master agreed with Husband and reduced the alimony award to eliminate these discretionary expenditures. The trial court properly sustained Wife's exception to this determination.

Husband and Wife chose to live a luxurious lifestyle during their marriage. Almost every expense of the parties during their marriage was discretionary in nature. The parties combined income was over 34 times the federal poverty level for a family of five. *See* Exhibits U, 13. The parties

spent their funds in a manner consistent with such an income and had a lavish lifestyle. Husband's attempt to make Wife live a far more modest lifestyle after the divorce is contrary to the Divorce Code and the well-settled law of this Commonwealth. Accordingly, we conclude that the trial court's alimony award was not an abuse of discretion.

Husband next challenges the trial court's award of $90,000.00 in counsel fees. Remarkably, according to the parties, combined they have expended well over $500,000.00 in legal fees contesting this divorce case and the accompanying child custody dispute.[5] Under the Divorce Code, in proper cases, the trial court may award counsel fees. *See* 23 Pa.C.S.A. § 3702. As we have explained:

> The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another. Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution. Counsel fees are awarded only upon a showing of need.

*Busse*, 921 A.2d at 1258 (internal quotation marks and citations omitted).

Husband contends that counsel fees were unnecessary because Wife could use her share of the equitable distribution, her APL, and her family's

---

[5] As the master in this case aptly noted, the parties have attempted to make this case as complicated as taking the cube root of pi. *See* N.T., 9/10/12, at 66.

wealth to pay for her attorney's fees. The trial court concluded that an attorney's fee award was appropriate because of the vast differential between Husband's earnings and Wife's earnings. Trial Court Opinion, 10/29/13, at 9. Furthermore, the trial court determined that Husband was unreasonably litigious in prosecuting this case. Wife defends the counsel fee as reasonable when compared to her total expenditures to litigate this divorce action and her child custody case.

We first note that although the total amount of counsel fees expended in the child custody dispute is startling, we may not consider that when determining if the award of counsel fees in the divorce action was appropriate. We also may not consider Wife's family's wealth. Wife's parents, grandparents, siblings, and other family members are not obligated to pay any portion of Wife's legal fees. Instead, Wife is responsible for fully satisfying the legal fees accrued over the course of this litigation.

We have previously rejected Husband's claims that an APL award and an award of a significant portion of the marital estate precludes an attorney's fee award. We have stated that, "Simply because the wife will receive [APL] and [55] percent of the marital estate does not preclude an award of counsel fees and costs." **Butler v. Butler**, 621 A.2d 659, 667 (Pa. Super. 1993), *rev'd in part on other grounds*, 663 A.2d 148 (Pa. 1995). Although the marital estate award in this case was slightly larger than that in **Butler**, that does not impact our reasoning. In **Butler**, we affirmed the

trial court's decision to award counsel fees because of the disparity in the earnings of the two parties. *Id.* As we have discussed above, there is a relatively vast disparity in incomes between the two parties in this case. Husband had an almost unlimited war chest to spend on litigating every issue in this divorce proceeding and, without an award of counsel fees, Wife may have had to acquiesce to some of Husband's unreasonable demands.[6] Therefore, we conclude that the trial court's award of counsel fees in this case was not an abuse of discretion.

In sum, we conclude that the trial court erred by retroactively making the 2011 and 2012 APL and child support payments allocated. We therefore reverse that portion of the trial court's determination. We also conclude that a small portion of the life insurance policy held by Wife and her brother is marital property and, therefore, we remand this case for a determination by the trial court as to which portion of the policy was marital property and what percentage of the marital asset shall be awarded to Husband. Finally we conclude that the trial court did not abuse its discretion with the remainder of its equitable distribution award and its counsel fee

---

[6] Husband also argues that some of Wife's counsel fees were spent litigating frivolous issues. We disagree. Although Wife did not succeed on every position she advanced in the trial court, our review of the record indicates that none of the positions taken by Wife were frivolous.

award. Therefore, we affirm the remainder of the trial court's determinations.[7]

Decree affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/2014

---

[7] Although not included as a question presented on appeal, we believe it necessary to address Husband's repeated claims in his brief that the trial court in this case was biased. Husband never filed a motion for disqualification in the trial court. Yet, throughout his appellate brief he attacks the trial judge as being biased. Such accusations are serious and experienced counsel for Husband should know better than to make such bold accusations when they chose not to seek the trial court's disqualification. *Cf. Lewis v. Smith*, 480 F. App'x 696, 700 (3d Cir. 2012) (members of the bar should not make unfounded accusations of judicial bias). Furthermore, our review of the record indicates that the trial court in this matter was not biased against Husband. Instead, the trial court decided issues in a manner it believed correct, much like a baseball umpire calls balls and strikes as he sees them. *Cf. Golinski v. U.S. Office of Pers. Mgmt.*, 824 F. Supp. 2d 968, 1002 (N.D. Cal. 2012) (referencing Chief Justice Roberts' comments to the Senate Judiciary Committee regarding the role of judges).